INTERNATIONAL TRUST COMPANY *vs.* ERNST SCHUMANN.

SAME *vs.* SAME.

ERNST SCHUMANN *vs.* INTERNATIONAL TRUST COMPANY.

Suffolk. January 17, 1893. — March 2, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Landlord and Tenant — Lease — Eviction — Breach of Covenant — Recoupment — Action.*

In an action for arrears of rent due under a lease, a tenant who remains in possession until the end of his term cannot recoup, as for an eviction, or a breach of the implied covenant for quiet enjoyment, the damages alleged to have been occasioned by the landlord during the term entering upon the demised premises for breach of the covenants of the lease by the tenant, and bringing an action to eject the tenant, who recovered judgment therein, and with knowledge that the premises were of value to the tenant only for his business of a common victualler and seller of liquors, causing the license commissioners to refuse him a license for the sale of liquors, and also causing his license as a common victualler to be taken from him wrongfully; nor can the tenant maintain an action of contract against the landlord upon the same facts.

---

THREE ACTIONS. The first case was an action of contract, the declaration in which contained two counts, the first of which alleged that, on October 5, 1885, the defendant, August Oschwald, and George P. Upham entered into a written lease, a copy of which was annexed, of the basement of the building situated on the corner of Devonshire Street and Milk Street, in Boston, for a term of five years; that, by the terms of the lease, the defendant and Oschwald agreed to pay an annual rent of $2,000, payments of $500 to be made quarterly upon the first days of April, July, October, and January of each year, and further agreed to pay one tenth of the taxes assessed upon the land and building on November 1 of each year, a fair proportion of the water rates upon the first days of April, July, October, and January of each year, and thirty dollars for steam heat on January 1 of each year; that the plaintiff, on April 1, 1889, became the owner of the land and building by mesne conveyance from Upham, and was still the owner thereof; that prior to April 1, 1889, Oschwald had given up possession of the premises, and the defendant was alone in possession, and so remained until the expiration of the lease, and made the payments to the plaintiff in accordance with the terms thereof up to and including October 1, 1889; that he failed to pay the amount due on January 1, 1891, namely, $535 for rent, water rent, and steam heat; and that the defendant owed the plaintiff the sum of $535, with interest thereon. The second count alleged, in substance, that the defendant further agreed by the lease to keep the premises in such repair as they were in at the time of making such lease, or might be put in during the continuance thereof, careful and reasonable use and wearing thereof and damage by fire excepted, to restore the premises, as to the glass thereon, in the same condition and with the same quality as at the time of making the lease, and peaceably to surrender at the expiration of the lease the premises, and all future erections and additions to or upon the same, in good tenantable repair in all respects, damage by fire excepted; that during the continuance of the lease the defendant allowed the premises to get out of repair, and the want of repair was not caused by the reasonable use and wearing thereof, that the glass thereon was broken, and he had failed to restore the same; and that the lease expired on January 1, 1891, and the defendant, though requested, did not peaceably surrender the premises and erec-

tions and additions made thereto in good tenantable repair, to the great damage of the plaintiff.

The answer contained a general denial, and also alleged that the plaintiff entered upon the premises leased by the defendant, and notified the defendant that he took possession of the same while the lease was still in force, and subsequently thereto brought against the defendant a writ to eject him from the premises and prosecuted the action, alleging that the defendant had broken the covenants in his lease, in which action the Superior Court rendered judgment for the defendant; and that the plaintiff thereby interfered with the quiet enjoyment of the premises by the defendant, and caused the defendant great expense and damage.

THE SECOND CASE was an action of contract, the declaration in which contained seven counts. The first six counts were for the amounts due for rent, water rates, taxes, and steam heat, under the terms of the lease declared on in the first case, down to and including November 1, 1890. The seventh count was upon an account annexed for $2,587.22, being the aggregate of the sums declared for in the first six counts.

The answer was the same as that in the first case, and the defendant also filed the following additional answer: "And the defendant further answering says that, if the defendant occupied said premises, he so occupied the same for the purpose of carrying on the business of a common victualler and for the sale of intoxicating liquors; that the only value of said premises to him was the carrying on of said business; that this was known to the plaintiff at the time he purchased the building and assumed the lease which the defendant had entered into with the plaintiff's assignor; that the plaintiff, well knowing this and being desirous of obtaining possession of the premises occupied by the defendant, as a means of securing the same and dispossessing the defendant, made objections to the license commissioners issuing a license for the sale of liquors by the defendant, for which he had made application, and by reason whereof the license was refused; and the defendant says that the plaintiff, intending further to injure the defendant and enjoy the beneficial enjoyment of the said premises, and to obtain possession of the said premises, caused his license as a common victualler to be revoked wrong-

fully and without right, whereby the business, to carry on which he hired the premises, was broken up and ruined, and great damage done to him."

THE THIRD CASE was an action of tort or contract, the declaration in which, after setting out the execution of the lease declared on in the other two cases, the assignment by Oschwald of his interest therein to the present plaintiff, and the conveyance of the premises by Upham to the present defendant, further alleged that, by the purchase, the defendant assumed all the covenants and stipulations in the lease; that the plaintiff, since the occupation of the premises, had carried on a restaurant as a victualler to provide and furnish food and drink to the public; that during the time of his occupation for that purpose he had carefully performed the conditions of the lease, and had never violated the same; and that the defendant, since it came into possession and control of the premises, had not lived up to the conditions in the lease, but had wantonly and wilfully violated the same in this, among other things, that it had obstructed the plaintiff in the enjoyment of the premises, to the great damage of the plaintiff in his business. The plaintiff also set up, by amendments to his declaration, the allegations contained in his answers in the first two cases. Answer, a general denial.

The three cases were tried together in the Superior Court before *Thompson*, J., without a jury. The defendant in the first two cases offered, by way of recoupment, to prove the allegations set forth in his answers. The judge ruled that the defendant could not offer such proof; and the defendant excepted.

The plaintiff in the third case offered to prove the facts alleged in his declaration, by way of recoupment to the claims declared for in the first two cases, or by way of damages for the disturbance of the plaintiff in the enjoyment of his rights under the lease. The judge ruled that the plaintiff could not offer the proof for either of such purposes; and the plaintiff excepted.

The judge found for the International Trust Company in each case; and Schumann alleged exceptions.

*E. Avery*, for Schumann.

*R. M. Morse & M. Morton*, for the International Trust Company, were not called upon.

BARKER, J.  Of the parties to these actions between landlord and tenant, the latter, having remained in possession until the end of the term demised, now alleges as an eviction the fact that during the term his landlord entered on the premises under claim of right to repossess them for breach of covenants by the tenant, and brought a process to eject the tenant, on which final judgment for the tenant was rendered; and he further alleges, as breaches of the implied covenant for quiet enjoyment, the same entry and suit, and the fact that the landlord, knowing that the premises were of value to the tenant only for his business of common victualler and seller of liquors, caused the license commissioners to refuse him a liquor license, and also caused his license as a common victualler to be taken from him wrongfully and without right.   None of these acts were an eviction of the tenant, or an ouster equivalent to an eviction, for the reason that he remained in the occupation of the premises until the end of his term.   *Fuller* v. *Ruby,* 10 Gray, 285.   *Bartlett* v. *Farrington,* 120 Mass. 284, and cases cited.   *Skally* v. *Shute,* 132 Mass. 367, 370.   *Lounsbery* v. *Snyder,* 31 N. Y. 514.   *Bennet* v. *Bittle,* 4 Rawle, 339.   *Hannam* v. *Woodford,* Skin. 300.   And for the same reason, if for no other, none of them worked a breach of the implied covenant for quiet enjoyment.   *Ellis* v. *Welch,* 6 Mass. 246, 252.   *Dexter* v. *Manley,* 4 Cush. 14.   *George* v. *Putney,* 4 Cush. 351, 355.   *Gardner* v. *Keteltas,* 3 Hill, (N. Y.) 330.   *Mayor & Aldermen of New York* v. *Mabie,* 3 Kernan, 151.   *Frost* v. *Earnest,* 4 Whart. 86.   *Schuylkill & Dauphin Railroad* v. *Schmoele,* 57 Penn. St. 271.   *Moore* v. *Weber,* 71 Penn. St. 429.   *Hayner* v. *Smith,* 63 Ill. 430.   *Gazzolo* v. *Chambers,* 73 Ill. 75.

The entry was a formal one, not interrupting the tenant's occupation, and doing him no damage.   The process was not a malicious suit, and for it his costs as the prevailing party are the only remedy.   *White* v. *Dingley,* 4 Mass. 433.   *Lindsay* v. *Larned,* 17 Mass. 190.   *Fisher* v. *Barrett,* 4 Cush. 381, 384.

Assuming that the entry and suit were an unjustifiable attempt to oust the tenant, which, if he had yielded, would have been an eviction and a breach of the covenant, as he did not yield and was never ousted, the entry was at most a mere trespass, for which he might recover nominal damages in a suitable action, but not in his present suit, which, by his declaration,

he has elected to treat as an action of contract for breach of covenant.

The alleged acts of the landlord with reference to the tenant's licenses from public authorities had no tendency to interrupt, and did not interrupt; the tenant's possession. See *De Witt* v. *Pierson*, 112 Mass. 8, 11 ; *Groustra* v. *Bourges*, 141 Mass. 7; *Stevens* v. *Pierce*, 151 Mass. 207; *Dennett* v. *Atherton*, L. R. 7 Q. B. 316; *Newby* v. *Sharpe*, 8 Ch. D. 39; *Chicago Legal News Co.* v. *Browne*, 103 Ill. 317; *McLarren* v. *Spalding*, 2 Cal. 510; *Connor* v. *Bernheimer*, 6 Daly, 295, 299 ; *Baughman* v. *Portman*, 14 S. W. Rep. 342; *Abadie* v. *Berges*, 41 La. An. 281.

As the tenant could neither recoup nor recover, the rulings were right.                    *Exceptions overruled.*