**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 45140**

| | |
|---|---|
| SONNY ROME, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) **Boise, August 2018 Term** |
| v. | ) |
| | ) **Filed: November 29, 2018** |
| STATE OF IDAHO, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| Respondent. | ) |
| | ) |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

District court order granting involuntary dismissal of petition for post-conviction relief, affirmed.

Eric D. Frederickson, State Appellate Public Defender, Boise, for appellant. Brian R. Dickson, Deputy Appellate Public Defender argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Kenneth K. Jorgensen, Deputy Attorney General argued.

_____

BURDICK, Chief Justice

Sonny Rome brings this post-conviction appeal from the Kootenai County district court. In March 2016, Rome moved for post-conviction relief from his aiding and abetting a burglary conviction, claiming counsel was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984). In support of post-conviction relief, he challenged counsel's performance at both the trial and direct-appeal phases. The district court held a one-day trial on Rome's post-conviction petition. At the trial, after Rome presented his case in chief, the State moved for a directed verdict. The district court granted the State's motion. Rome timely appeals, arguing that the district court erred by: (1) not taking judicial notice of certain items at the post-conviction phase, and (2) concluding trial counsel was not ineffective for failing to request a certain jury instruction. We affirm.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

A jury convicted Rome of aiding and abetting a burglary. As articulated in his appellate brief, the facts underlying Rome's conviction are as follows:

> On December 11, 2013, Sonny Rome drove to a Walmart store in Post Falls. Testimony established that a woman[1] took a vacuum cleaner from the store and entered Rome's truck with it; Rome was driving and left the area with the woman and vacuum. Rome was charged with aiding and abetting a burglary (the theft of the vacuum). Rome was convicted[.]

In addition to finding that Rome had aided and abetted the burglary, the jury found that, consistent with the State's amended information, Rome was a persistent violator under Idaho Code section 19-2514 because he had four prior felony convictions. *State v. Rome*, 160 Idaho 40, 42, 368 P.3d 660, 662 (Ct. App. 2016). On Rome's direct appeal taken to the Court of Appeals, the Court of Appeals rejected Rome's constitutional and persistent-violator-enhancement claims, affirming his conviction. *Rome*, 160 Idaho at 44–45, 368 P.3d at 664–65.

Rome timely filed a *pro se* petition for post-conviction relief in March 2016. He was appointed post-conviction counsel after filing his petition, and then amended his petition with counsel's assistance in November 2016. Rome alleged that trial counsel was ineffective under *Strickland* for failing to: (1) file "a motion to suppress involuntary statements"; (2) object to "hearsay and inadmissible testimony"; (3) "properly object to conviction records coming into evidence"; (4) "object and properly advise client regarding testifying"; (5) "obtain a correct jury instruction for 'aiding and abetting' and arguing the same"; and (6) "present mitigation at sentencing and Rule 35 hearing[.]" And as to appellate counsel, Rome alleged appellate counsel was ineffective under *Strickland* for failing to (1) "raise [the] issue of testimony about defendant's identity"; (2) "raise the issue of sufficiency of proof of prior convictions"; and (3) "raise the issue of cumulative errors."[2] The State answered in November 2016, and sought summary dismissal in December 2016. The district court denied the State's motion for summary dismissal in January 2016, concluding the State's motion was untimely under the scheduling

---

[1] The evidence presented at trial identified this woman as Amanda George, who is Rome's partner's daughter. The record identifies Debra George (Amanda George's mother) as both Rome's wife, and girlfriend. Thus, this opinion refers to Debra George as Rome's "partner."

[2] In his amended petition for post-conviction relief, Rome further alleged that (1) trial counsel was ineffective for failing to "track down vacuum receipt"; (2) appellate counsel was ineffective for failing to "raise [the] issue of testimony about defendant's identity"; and (3) appellate counsel was ineffective for failing to "raise the issue of sufficiency of proof of prior convictions." Rome later withdrew these three claims.

order. The district court clarified that it would consider the summary dismissal briefing as trial briefing, but instructed the parties to submit additional trial briefing if they desired.

A bench trial occurred on February 22, 2017. In presenting his case in chief, Rome called two witnesses: Jay Logsdon (Rome's trial and direct appeal counsel) and Debra George (Rome's partner). The State moved for a directed verdict once Rome rested. The district court granted the State's motion. When doing so, the district court explained, as relevant here, that "the [c]ourt has not been asked to take judicial notice, at least a formal motion hasn't been made[.]"Also relevant here, the district court ruled that trial counsel was not ineffective for failing to request Rome's preferred "jury instruction for 'aiding and abetting' . . . ." Rome timely appeals, contending the district court erred by concluding that Rome had failed to make a request for judicial notice and that Rome's trial counsel was not ineffective under *Strickland* for failing to request the jury instruction.

## II. ISSUES ON APPEAL

1. Did the district court abuse its discretion in its judicial notice ruling?
2. Did the district court err by concluding trial counsel's failure to request a lesser-included-offense instruction did not constitute ineffective assistance of counsel under *Strickland*?

## III. STANDARD OF REVIEW

Post-conviction proceedings are governed by Idaho Code sections 19–4901 to 4911. ("The Uniform Post-Conviction Procedure Act"). Post-conviction petitions are civil actions, rather than criminal, that are "governed by the Idaho Rules of Civil Procedure." *Rhoades v. State*, 148 Idaho 247, 249, 220 P.3d 1066, 1068 (2009); I.C. § 19-4907(a) ("All rules and statutes applicable in civil proceedings including pre-trial, discovery and appellate procedures are available to the parties."). Accordingly, an applicant for post-conviction relief "must . . . prove the allegations in the request for relief by a preponderance of the evidence." *State v. Dunlap*, 155 Idaho 345, 361, 313 P.3d 1, 17 (2013).

Rome argues that this Court must review the lower court's findings that Rome failed to meet the preponderance of the evidence standard on his claims under a directed-verdict standard of review. Rome would be correct if the trial court's grant of a Rule 50(a) directed verdict was proper in this case. But, procedurally speaking, directed verdicts under Rule 50(a) are reserved for jury trials while the Uniform Post-Conviction Procedure Act provides that when a petition for post-conviction relief advances to the trial stage, the proceedings will be before a judge, not a jury. *Compare* I.R.C.P 50(a) ("The order of the court granting a motion for a directed verdict is

3

effective without the agreement of the jury."), *with* I.C. § 19-4907(a) ("The application shall be heard in, and before any judge of, the court in which the conviction took place.").

This distinction is important in this case because Rome appeals the findings of such a bench trial. A "directed verdict at the close of the plaintiff's evidence in a bench trial is inappropriate" because a "judge does not render a verdict in a bench trial." *Spirit Ridge Mineral Springs, LLC v. Franklin Cnty.*, 157 Idaho 424, 426, 337 P.3d 583, 585 (2014). Rather, a directed verdict is "[a] ruling by a trial judge *taking a case from the jury* because the evidence will permit only one reasonable verdict." *Id.* (quoting Black's Law Dictionary, at 1791 (10th ed. 2014)).

Therefore, for purposes of this appeal, this Court will apply the involuntary dismissal standard under Rule 41(b) of the Idaho Rules of Civil Procedure. Rule 41(b) "empowers a district court to dismiss a case after the plaintiff's presentation of the evidence at a trial without a jury." *Id.* Because the State petitioned the district court to dismiss the case after Rome presented his evidence, Rule 41(b) is the procedurally proper mechanism for the trial court's action.

The distinction between a directed verdict and involuntary dismissal is important for appellate review purposes:

> When a defendant moves for an involuntary dismissal at the close of the plaintiff's presentation in a non-jury case, the court sits as a trier of fact and is not required to construe all evidence and inferences to be drawn therefrom in the light most favorable to the plaintiff; instead the district court may weigh the evidence.

*Id.* (quoting *Keenan v. Brooks*, 100 Idaho 823, 825, 606 P.2d 473, 475 (1980)). Given that the trial court is the finder of fact under the Rule 41(b) standard, the appellate court will uphold those findings on review "so long as those findings are not clearly erroneous." *Id.* (citing *Staggie v. Idaho Falls Consol. Hosps.*, 110 Idaho 349, 715 P.2d 1019 (Ct. App. 1986)). "A factual finding is clearly erroneous only if it is not supported by 'substantial and competent evidence in the record.'" *Stuart v. State*, 127 Idaho 806, 813, 907 P.2d 783, 790 (1995) (quoting *Pace v. Hymas*, 111 Idaho 581, 589, 726 P.2d 693, 701 (1986)). Therefore, this Court will uphold the district court's findings so long as they are supported by substantial and competent evidence.

## IV. ANALYSIS

**A. The district court did not abuse its discretion in its ruling that Rome's requests for judicial notice lacked the necessary information required by Former Rule 201(d) of the Idaho Rules of Evidence.**

Rome's first argument is that the district court erred by not taking judicial notice of certain items he requested. Rome's argument triggers the former Idaho Rule of Evidence 201(d) ("Former Rule 201(d)")[3]. Former Rule 201(d) provided:

> When a party makes an oral or written request that a court take judicial notice of records, exhibits or transcripts from the court file in the same or a separate case, the party shall identify the specific documents or items for which the judicial notice is requested or shall proffer to the court and serve on all parties copies of such documents or items. A court shall take judicial notice if requested by a party and supplied with the necessary information.

I.R.E 201(d) (1985) (amended 2018). "[W]hile the interpretation of a court rule must always begin with the plain, ordinary meaning of the rule's language it may be tempered by the rule's purpose. We will not interpret a rule in a way that would produce an absurd result." *State v. Montgomery*, 163 Idaho 40, 44, 408 P.3d 38, 42 (2017). In interpreting Former Rule 201(d), this Court has explained that,

> [w]here an attorney is requesting that a court take judicial notice of a document or items, that attorney must state with particularity what he is asking the Court to take notice of. Where an attorney does not meet this requirement it is improper for a court to take judicial notice under I.R.E. 201(d).

*Taylor v. McNichols*, 149 Idaho 826, 835, 243 P.3d 642, 651 (2010).

This Court has not previously addressed whether a district court's judicial notice ruling under Former Rule 201(d) is reviewed for an abuse of discretion. Because the ruling is an evidentiary one, an abuse of discretion standard is appropriate. *See, e.g.*, *Mulford v. Union Pac. R.R.*, 156 Idaho 134, 140, 321 P.3d 684, 690 (2014); *see also Bolognese v. Forte*, 153 Idaho 857,

---

[3] The Idaho Rules of Evidence were amended in March of 2018 and the amendments became effective July 1, 2018. Because Rome's trial occurred prior to the amendment of the Idaho Rules of Evidence, his claims will be analyzed under the former rules, rather than the amended versions currently in effect. Former Rule 201(d) is the previous iteration of what is now Rule 201(c)(2). The relevant portion of Rule 201 now provides that the court

> must take judicial notice if a party requests it and the court is supplied with the necessary information[.]
>
> When a court takes judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the court must identify the specific documents or items so noticed. When a party requests judicial notice of records, exhibits, or transcripts from the court file in the same or a separate case, the party must identify the specific items for which judicial notice is requested or offer to the court and serve on all parties copies of those items.

I.R.E. 201(c)(2).

863–64, 292 P.3d 248, 254–55 (2012) (asking whether the district court abused its discretion by failing to take judicial notice of ordinances and administrative rules but not specifying the particular judicial notice rule at issue); *Fortin v. State*, 160 Idaho 437, 442, 374 P.3d 600, 605 (Ct. App. 2016) (reviewing ruling under Former Rule 201(d) for an abuse of discretion). This remains so even though Former Rule 201(d) sets forth a mandatory directive. As other jurisdictions have explained, "[a]lthough the rule is phrased in mandatory language, courts of appeals review a district court's refusal to take judicial notice for abuse of discretion." *See Toth v. Grand Trunk R.R.*, 306 F.3d 335, 349 (6th Cir. 2002) (citing *Waid v. Merrill Area Pub. Schs.*, 130 F.3d 1268, 1272 (7th Cir. 1997)); *York v. AT & T Co.*, 95 F.3d 948, 958 (10th Cir. 1996)).

This Court will therefore review the district court's ruling under Former Rule 201(d) for an abuse of discretion. To determine whether the district court abused its discretion, this Court employs a four-part analysis to evaluate whether the district court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with relevant legal standards; and (4) reached its decision by an exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Here, in his opening brief, Rome does not ground his argument in the abuse of discretion standard of review. Rather, he contends instead that the district court's ruling should be reviewed for clear error. *Visser v. Auto Alley, LLC*, 162 Idaho 1, 3, 393 P.3d 1027, 1029 (2017) (quoting *Pinnacle Eng'rs, Inc. v. Heron Brook, LLC*, 139 Idaho 756, 758, 86 P.3d 470, 472 (2004) ("A trial court's findings of fact will not be set aside on appeal unless they are clearly erroneous."). He specifically takes issue with the following findings of the district court:

> [T]he Court finds that there is no evidence in this record that appellate counsel failed to raise the issue of cumulative error. *I mean that may be the case, but the Court has not been asked to take judicial notice, at least a formal motion hasn't been made, I haven't been asked to make that determination*. There's been some reference to the fact that the Court could have, but judicial notice requires a motion by the moving party and a decision by the Court, and *that motion simply was never made to the Court . . . .*

According to Rome, the district court erred factually because he did propound several requests for judicial notice. Rome is correct that the record shows he made such requests. But the inquiry still remains whether Rome's requests were sufficient to comply with the requirements of Former Rule 201(d). This inquiry implicates the abuse of discretion standard of review and, more particularly, whether the district court acted consistently with relevant legal standards.

Distilled, the record shows that Rome requested that judicial notice be taken of seven primary items (and sources), several of which overlap:

(1) The "trial transcript" from his underlying criminal case;

(2) The "appellate briefs" from his direct appeal;

(3) "Prior conviction records" from his underlying criminal case;

(4) "[E]xhibits showing past alleged crimes" from his underlying criminal case;

(5) "The Clerk's Record on Appeal" from his direct appeal;

(6) The "court's complete file" from his underlying criminal case; and

(7) The "court file" in *State v. George.*[4]

In the aggregate, Rome's judicial notice requests are insufficient.

Former Rule 201(d) is clear that judicial notice can be taken only of "adjudicative facts." I.R.E. 201(a) (1985) (amended 2018). An adjudicative fact is:

> A controlling or operative fact, rather than a background fact; a fact that concerns the parties to a judicial or administrative proceeding and that helps the court or agency determine how the law applies to those parties. For example, adjudicative facts include those that the jury weighs.

*State v. Lemmons*, 158 Idaho 971, 974, 354 P.3d 1186, 1189 (2015) (internal quotation marks omitted) (quoting *Black's Law Dictionary* 610 (7th ed. 1999)). Former Rule 201(d) goes on to say that judicial notice is appropriate only if the requesting party has "supplied . . . the necessary information." Providing the "necessary information" means supplying the court with a specific reference to the adjudicative fact or facts contained in the designated record, exhibit, or transcript that is relevant to the cause of action or specific claim before the court. When requesting the file or transcript from a prior proceeding in the same case, the motion must delineate with specificity the portion of the file or transcript that supports the adjudicative fact or facts relevant to the claim or claims before the court. Rome did not meet this burden.

None of Rome's overly broad requests asserted that they pertained to only adjudicative facts. Likewise, in none of Rome's requests did he ever assert the facts requested to be noticed were "not subject to reasonable dispute[.]" *But cf.* I.R.E. 201(b) (1985) (amended 2018) (explaining that judicial notice is proper if the fact to be noticed is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court

---

[4] *State v. George* was the criminal case in which Rome's partner's daughter, Amanda George, pleaded guilty to the burglary.

7

or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").[5]

In fact, Rome did not specify to what facts many of his requests pertained. Rome's failure to do so triggers the former Idaho Rule of Evidence 103(a)(2)[6], which precludes error from being predicated on a ruling that excludes evidence unless, *inter alia*, "the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." I.R.E. 103(a)(2) (1985) (amended 2018). Rome did not specify what adjudicative fact or facts the district court was supposed to notice by reading the appellate briefs from his direct appeal. The same is true with regard to the request for judicial notice of "[p]rior conviction records" and "exhibits showing past alleged crimes" from his underlying criminal case. Nor did Rome specify what adjudicative fact or facts the district court was supposed to notice by reading the entire "Clerk's Record on Appeal" from his direct appeal or the entire "court file" from *State v. George*. These ill-defined requests hardly comport with the cornerstone command that the Idaho Rules of Evidence be "construed to secure fairness in administration [and] elimination of unjustifiable expense and delay[.]" I.R.E. 102 (1985) (amended 2018).[7]

Granted, Rome did claim that taking judicial notice of (1) the "trial transcript" from his underlying criminal case would show "Rome's testimony at trial indicating coercion by Officer Nowels when obtaining Rome's statements," and (2) the "court's complete file" from his underlying criminal case would show "that no motion to suppress statements was filed by the

---

[5] The relevant portion of Rule 201, as amended, now provides:

> The court may judicially notice a fact that is not subject to reasonable dispute because it:
> (1) is generally known within the trial court's territorial jurisdiction; or
> (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.

I.R.E 201.

[6] The relevant portion of Rule 103, as amended, now provides:

> (a) Preserving a Claim of Error. A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and:
> (1) if the ruling admits evidence, a party, on the record:
> (A) timely objects or moves to strike; and
> (B) states the specific ground, unless it was apparent from the context; or
> (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context.

I.R.E 103.

[7] Rule 102, as amended, now provides "[t]hese rules should be construed so as to administer every proceeding fairly, eliminate unjustifiable expense and delay, and promote the development of evidence law, to the end of ascertaining the truth and securing a just determination." I.R.E. 102.

8

defense . . . ." Those surface-level specifications notwithstanding, Rome never pointed to what portions of the testimony were implicated or explained why such facts, even if they were adjudicative facts not subject to reasonable dispute, were relevant and otherwise admissible in evidence. *See* I.R.E. 402 (1985) (amended 2018) ("All relevant evidence is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible.").[8]

Many of Rome's requests for judicial notice are fatally unspecific or overbroad. In particular, Rome's requests that judicial notice be taken of "prior conviction records" and "[e]xhibits showing past alleged crimes" fail for lack of specificity and vagueness. Though judicial notice may be taken of "records [or] exhibits from the court file[,]" Rome never "identif[ied] the specific documents or items [(*i.e.*, the particular records and exhibits)] for which the judicial notice [wa]s requested[.]" I.R.E. 201(d) (1985) (amended 2018). Three more of Rome's requests for judicial notice—that judicial notice be taken of the (1) "Clerk's Record on Appeal" from his direct appeal; (2) "court's complete file" from his underlying criminal case; and (3) "court file" in *State v. George*—also fail for overbreadth. Former Rule 201(d) is clear that it allows judicial notice to be taken "of records, exhibits or transcripts *from* the court file . . . ." (emphasis added). The rule does not say, by contrast, that judicial notice may be taken "[*of*] the court file[.]" *See id.* But even if the rule did so permit, before judicial notice may be taken, "the party shall identify the *specific documents or items* for which the judicial notice is requested or shall proffer to the court and serve on all parties copies of such documents or items." *Id.* (emphasis added). Only then is judicial notice appropriate.

None of Rome's requests are salvaged by their use of case identifiers. In *Fortin v. State*, 160 Idaho at 441–43, 374 P.3d at 604–06, the Idaho Court of Appeals resolved an argument similar to the one Rome makes here. There, the defendant sought post-conviction relief from his convictions for aggravated battery and use of a deadly weapon in the commission of a crime. *Id.* at 439, 374 P.3d at 602. He requested that the district court take judicial notice of "the entire record in both the underlying and separate criminal cases[,]" which also involved the defendant. *Id.* at 440, 374 P.3d at 603. The district court denied the defendant's request for judicial notice for lack of specificity. *Id.* The Court of Appeals affirmed that ruling on the defendant's timely

---

[8] Rule 402, as amended, now provides "[r]elevant evidence is admissible unless these rules, or other rules applicable in the courts of this state, provide otherwise. Irrelevant evidence is not admissible." I.R.E. 402.

appeal. *Id.* at 448, 374 P.3d at 611. Citing this Court's decision in *Taylor*, the *Fortin* court reiterated that "where a party is requesting that a court take judicial notice of a document or items, that party must state with particularity what he or she is asking the court to take notice of"; otherwise, "it is improper for a court to take judicial notice under I.R.E. 201(d)." *Id.* at 442, 374 P.3d at 605. *Fortin* then addressed the defendant's argument "that requesting a court to notice the entire record of multiple cases and appellate records is specific enough under the rule." *Id. Fortin* concluded that argument was unavailing and explained:

> Such an interpretation would burden courts, especially within the post-conviction context, and unnecessarily require courts to sift through large amounts of superfluous information in order to seek out relevant information that substantiates the party's claims. Rather, the party is in the best position to identify and refer the court to the relevant portions of the record that support his or her arguments. After this issue was discussed by the Idaho Appellate Rules Advisory Committee, I.R.E. 201(d) was amended to require that a party must designate what portions of the file he or she is requesting. Accordingly, based on the plain meaning and purpose of the rule, we hold that the specificity requirement of I.R.E. 201(d) requires that a party provide more than a blanket reference to an entire case when requesting a court to take judicial notice of documents or items within it.

*Id.* at 442–43, 374 P.3d at 605–06.

The same logic applies here. Rome was better positioned to direct the district court toward specific documents or to otherwise tailor his requests toward relevant information. A request for judicial notice should aid the court in construing and applying the rules of evidence "to the end that the truth may be ascertained and proceedings justly determined[,]" I.R.E. 102 (1985) (amended 2018), not saddle the court with an inefficient and onerous obligation to scour the records of underlying or separate cases in an aimless search for information that might be potentially relevant. Actually, to do so would make that judge an advocate of the moving party as the judge would be gleaning facts for one party or another. Indeed, "[t]he legal construct of judicial notice is intended to preserve judicial efficiency by recognizing facts that are easily and objectively verifiable." *Lemmons*, 158 Idaho at 979, 354 P.3d at 1194 (W. Jones, J., concurring).[9] Therefore, we find no abuse of discretion in the district court's decision on Rome's request for judicial notice.

---

[9] For the same reasons articulated above, Rome's requests are not salvaged by him providing copies of certain documents to the court and counsel, as this does not cure the fatal shortcomings identified above.

**B. The district court did not err by concluding that trial counsel's failure to request a lesser-included-offense instruction did not constitute ineffective assistance of counsel.**

Rome further contends the district court erred by denying his post-conviction claim alleging trial counsel was ineffective for failing to request a "proper jury instruction for 'aiding and abetting.'" Rome specifically takes issue with trial counsel's failure to request a jury instruction on the "lesser-included offense of accessory after the fact." In denying Rome's petition on this count, the district court found, among other reasons, that "no evidence or basis in law was presented to establish that the trial judge would have . . . instructed the jury" of the lesser-included offense. Rome argues that the district court's findings are not supported by evidence because Rome's original trial counsel testified that "[l]ooking back at it in hindsight," he could have argued and requested jury instruction on accessory after the fact. Rome also argues that the district court would have been required to give the instruction if it was requested because it is a lesser-included offense of aiding and abetting.

But this Court need not reach the merits of Rome's arguments because they rely on a faulty premise. Rome's argument rests upon the proposition that accessory after the fact is a lesser-included offense of aiding and abetting. This premise is a threshold determination because it presents two forking paths in the ineffective-assistance-of-counsel analysis. On one hand, if accessory after the fact is indeed a lesser-included offense of aiding and abetting, then Rome's argument, and this Court's analysis as to whether Rome's trial counsel was ineffective for failing to request such an instruction, may proceed to the next step. On the other hand, if accessory after the fact is not a lesser-included offense of aiding and abetting, then accessory after the fact would remain a separate crime, thereby causing Rome's claim of ineffective assistance of counsel to fail. Rome's argument would fail because, had counsel requested the instruction for a separate crime, it would have exposed Rome to additional criminal liability, rather than less. Likewise, if accessory after the fact is not a lesser-included offense, then Rome's argument that the lesser-included-offense instruction was legally required to be given is also inapplicable.

According to Rome, "[b]eing an accessory after the fact is one means by which a person can aid and abet a principal, and thus, commit the overarching offense . . . . As such, accessory is an included offense with aiding and abetting under a pleading theory." This is both an over-simplification and a misstatement of the law. In addition to the pleading theory presented by Rome, Idaho also uses the statutory theory in discerning whether a crime constitutes a lesser-

11

included offense of another. *State v. Curtis*, 130 Idaho 522, 524, 944 P.2d 119, 121 (1997). Only one of the two approaches is required to be met for accessory after the fact to qualify as a lesser-included offense of aiding and abetting. *Id.* Rome's argument melds the two theories together. Given that the trial court found that "no evidence or basis in law" existed for the original trial court to grant a jury instruction if it were requested, it can be safely concluded that neither theory was met in the trial court's view. As illustrated below, the record contains substantial and competent evidence for the trial court's finding because: (1) accessory after the fact is not a lesser-included offense of aiding and abetting under the statutory theory, and (2) this Court will presume that the record supports the trial court's determination that the pleading theory was not met because Rome provided an insufficient record to this Court on this matter.

1. <u>Accessory after the fact is not a lesser-included offense under the statutory theory because accessory after the fact's statutory elements are not included within aiding and abetting's statutory elements.</u>

As the name implies, the statutory theory focuses on the language of the criminal statutes in question. *State v. McIntosh*, 160 Idaho 1, 4, 368 P.3d 621, 624 (2016) ("[O]ne offense is not considered a lesser-included of another unless it is necessarily so under the statutory definition of the crime."). The statutory theory applies the test originally articulated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299 (1932), restated by this Court as: "[A]n offense will be deemed to be a lesser included offense of another, greater offense, if all the elements required to sustain a conviction of the lesser included offense are included within the elements needed to sustain a conviction of the greater offense." *State v. Flegel*, 151 Idaho 525, 527, 261 P.3d 519, 521 (2011) (quoting *State v. McCormick*, 100 Idaho 111, 114, 594 P.2d 149, 152 (1979)). As a result, "an offense is not lesser-included if it is possible to commit the greater offense without committing the lesser." *McIntosh*, 160 Idaho at 5, 368 P.3d at 625.

Accordingly, when Rome argues in general terms that "[b]eing an accessory after the fact is one means by which a person can aid and abet a principal, and thus, commit the overarching offense," he is essentially stating that the elements of accessory after the fact exist within the aiding and abetting elements. Contrary to Rome's assertion, this is an argument under the statutory theory, not the pleading theory because the pleading theory requires an examination of the charging documents. *State v. Curtis*, 130 Idaho at 524, 944 P.2d at 121 (quoting *Sivak v. State*, 112 Idaho 197, 211, 731 P.2d 192, 206 (1986)) ("Under the pleading theory 'an offense is an included offense if it is alleged in the information as a means or element of the commission of

12

the higher offense.'"). Therefore, an examination of the criminal statutes is required to verify Rome's contention.

The statutory requirements for accessory after the fact are found at section 18-205 of the Idaho Code. It provides as follows:

> All persons are accessories who, having knowledge that a felony has been committed:
>
>> (1) Willfully withhold or conceal it from a peace officer, judge, magistrate, grand jury or trial jury; or
>>
>> (2) Harbor and protect a person who committed such felony or who has been charged with or convicted thereof.

I.C. § 18-205. Therefore, the accessory-after-the-fact statute requires that (1) the actor "hav[e] knowledge that a felony has been committed"; then, (2) with that knowledge, either (a) "willfully withhold or conceal" that knowledge from law enforcement or (b) "harbor or protect a person" who committed the felony or is charged with committing it. *Id.*

In contrast, the aiding-and-abetting statute reads in relevant part:

> All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.

I.C. § 18-204. The aiding and abetting statute therefore requires the actor to either: (1) directly commit the crime; (2) aid and abet in the crime's commission; or (3) if not present at the crime, advised or encouraged in its commission. Put succinctly, "aiding and abetting requires some proof that the accused participated in or assisted, encouraged, solicited, or counseled the crime." *State v. Randles*, 117 Idaho 344, 347, 787 P.2d 1152, 1155 (1990) (internal quotation marks omitted), *overruled on other grounds by State v. Humpherys*, 134 Idaho 657, 8 P.3d 652 (2000). In terms of the mental state required for aiding and abetting, simply having knowledge of the crime is not enough. *State v. Adamcik*, 152 Idaho 445, 464, 272 P.3d 417, 436 (2012) ("Mere knowledge of a crime and assent to or acquiescence in its commission does not give rise to accomplice liability."). Rather, aiding and abetting "contemplates a sharing by the aider and abettor of the criminal intent of the perpetrator." *Howard v. Felton*, 85 Idaho 286, 297, 379 P.2d 414, 421 (1963) (citing *People v. Hill*, 175 P.2d 45 (Cal. App. 1946)).

A plain reading of the statutes in question reveals that all the elements required to sustain a conviction of accessory after the fact are not included within the elements needed to sustain a

conviction of aiding and abetting. The most obvious difference is that aiding and abetting requires more than simple knowledge that a crime has been committed—it requires intent that the crime be committed. *Id.* Second, aiding and abetting refers to acts done prior to and during the commission of a crime while accessory after the fact requires knowledge that a crime *has been committed*. Accessory after the fact, as its name suggests, requires that the statutorily-prohibited conduct (i.e. withholding or concealing knowledge of the felony or harboring the person who committed the felony) occur *after* the crime has been committed. Indeed, one cannot act with the knowledge that a crime has been committed unless the crime has, in fact, been committed. This stands in stark contrast to the aiding-and-abetting statute, which requires that the person actively participate in the commission in the crime in some manner and have the specific intent that the crime be committed. Therefore, the statutes refer to related but temporally distinct conduct.

Rome's contention that "accessory after the fact is one means by which a person can aid and abet a principal" is incorrect. For example, one can be an accessory after the fact by failing to disclose a felony to police. But this is not one means by which a person can aid and abet a principal. To the contrary, "[f]ailure to disclose the occurrence of a crime to authorities is not sufficient to constitute aiding and abetting. Rather, under the Idaho Criminal Code, failure to report a felony makes a person guilty only as an accessory, not as an accomplice." *Randles*, 117 Idaho at 347, 787 P.2d at 1155 (citing *Bird v. United States*, 187 U.S. 118 (1902)).

Rome also refers this Court to section 19-1430 of the Idaho Code which abolishes the distinction between accessories and principals. That statute reads in relevant part:

> The distinction between an accessory before the fact and a principal and between principals in the first and second degree, in cases of felony, is abrogated; and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, shall hereafter be prosecuted, tried, and punished as principals, and no other facts need be alleged in any indictment against such an accessory than are required in an indictment against his principal.

I.C. § 19-1430. Rome is correct that this statute eliminates a distinction between accessories and principals, but the distinction is much narrower than Rome suggests. The statute plainly states that the distinction between "*accessories before the fact* and a principal" is abrogated. *Id.* (emphasis added). Yet the statute makes no mention of accessory after the fact. Moreover, the statute's language proceeds to articulate the conduct of aiding and abetting: The person must be

14

"concerned in the commission of the crime" either by "directly commit[ting] the act" or "advis[ing] and encourag[ing] its commission." *Id.* Accessory after the fact's *mens rea* indicating that the prohibited conduct must occur after the crime has been committed is also absent from section 19-1430.

Thus, the crime of accessory after the fact contains elements that are not found in the statutory definition of aiding and abetting. As a result, accessory after the fact is not a lesser-included offense of aiding and abetting under the statutory theory.

2.  <u>This Court will presume the trial court's findings are supported by substantial, competent evidence because Rome supplied an insufficient record to this Court.</u>

Despite articulating an argument that appears to go to the statutory theory, Rome nevertheless contends that accessory after the fact is a lesser-included offense of aiding and abetting based on the pleading theory. Under the pleading theory, "an offense is included within another if the charging document alleges facts that, if proven, also necessarily prove the elements of the lesser included offense." *McIntosh*, 160 Idaho at 5, 368 P.3d at 625 (citing *Flegel*, 151 Idaho at 529, 261 P.3d at 523). The pleading theory analysis therefore depends upon an examination of the charging document. So when Rome argues that "accessory is an included offense with aiding and abetting under a pleading theory," the supposition is that Rome relies on the charging document for that contention.

Without the charging document in the record, this Court is unable to assess whether Rome's argument has merit. Moreover, as Rome concedes, "it is unclear whether the charging document was properly before the district court." This Court has long articulated that "[i]t is the responsibility of the appellant to provide a sufficient record to substantiate his or her claims on appeal." *Greenfield v. Smith*, 162 Idaho 246, 253, 395 P.3d 1279, 1286 (2017) (quoting *Belk v. Martin*, 136 Idaho 652, 661, 39 P.3d 592, 601 (2001)).

Given that the district court found that "no evidence or basis in law" supported Rome's contention that the jury instructions should have been presented, there is a lack of clarity as to whether the charging document was presented before the district court. One possibility is that the trial court found the pleading theory to be lacking because there was no charging document properly before the court. Alternatively, the trial court could have had the charging document before it, but nevertheless found the pleading theory unmet based upon the document. Such conjecture, however, is unnecessary because "[w]hen a party appealing an issue presents an incomplete record, this Court will presume that the absent portion supports the findings of the

district court." *Hansen v. White*, 163 Idaho 851, 853, 420 P.3d 996, 998 (2018) (quoting *Gibson v. Ada Cnty.*, 138 Idaho 787, 790, 69 P.3d 1048, 1051 (2003)). Therefore, this Court will presume that the charging document, or its absence at the trial stage, supports the trial court's findings. We find no error in the district court's determination that "no evidence or basis in law" was presented to support Rome's claim of ineffective assistance of counsel.

## V. CONCLUSION

The decision of the district court is affirmed.

Chief Justice BURDICK and Justices HORTON, BRODY, BEVAN and STEGNER, **CONCUR.**